ALLSTATE INSURANCE COMPANY
v.
GENERAL FIRE AND CASUALTY COMPANY.

CLARK TRANSFER, INC., Plaintiff,
v.
TRANS COUNTRY VAN LINES, INC.
Defendant.

Civ. A. Nos. 69-698, 69-2252.

United States District Court,
E. D. Pennsylvania.

Aug. 31, 1972.

Edwin F. McCoy, LaBrum & Doak, Philadelphia, Pa., for plaintiff.

William R. Dimeling, Montgomery, McCracken, Walker & Rhodes, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, District Judge.
### FACTS

Two related cases have been submitted for determination by the court without a jury as to liability. The basic issue for determination is which of two insurance carriers is the "primary" carrier and which is the "excess" carrier. The record consists of admissions in the pleadings and a stipulation of facts. None of the basic facts are in dispute. The following is a summary of the agreed facts, and shall for purposes of

these decisions be deemed findings of fact.

Clark Transfer, Inc. (Clark Transfer) and Trans Country Van Lines, Inc. (Trans Country) are entirely separate corporations, both engaged in the trucking business including the transportation of property by automobile for others. By written lease dated March 29, 1968, Clark Transfer, as lessor, leased to Trans Country, as lessee, a tractor-trailer combination and a driver. The lessee, Trans Country, was to utilize the leased equipment and driver to transport property of a third party from Delaware to Texas, under Interstate Commerce Commission franchise rights and routes issued exclusively as between the parties to Trans Country.

Under the terms of the lease, Clark Transfer, the lessor, warranted that the driver was competent and that the driver and equipment met all legal and governmental requirements. Clark Transfer further agreed to "indemnify Lessee against (1) any loss resulting from the injury or death of such driver(s) and (2) any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s)." Trans Country, as lessee, agreed that the "vehicle(s) shall be solely and exclusively under the direction and control of the Lessee who shall assume full common carrier responsibility (1) for loss or damage to cargo transported in such motor vehicle and (2) for the operation of such vehicle."

Both Clark Transfer and Trans Country carried comprehensive liability insurance policies with "omnibus insured" clauses and "Truckmen's endorsements." Except as to the amounts of coverages, the terms of both policies, insofar as relevant to these cases, were substantially the same. Allstate Insurance Company (Allstate) insured the lessor, Clark Transfer and General Fire and Casualty Company (General Fire) insured the lessee, Trans Country (Policy No. NA 004484).

The "omnibus insured" clauses covered the named insured's lessees and employees of those lessees for "excess insurance over any other valid and collectible insurance available." The "Truckmen's endorsements" provided that as to persons engaged in transporting property by automobile and employees of such persons, the policy would cover as to a vehicle hired from another if (1) the vehicle was being used exclusively in the business of the named insured and over a governmentally authorized route of the named insured, and (2) the owner of the vehicle carried an insurance policy with reciprocal coverage "on a direct primary basis" as to any vehicle hired by such owner. The endorsement further provided, insofar as applicable to these cases, that where the above conditions were met, "the insurance under this endorsement is primary insurance."

While operating under the terms of the lease, and traveling on the authorized route, the driver of the tractor-trailer, Roland Thompson, negligently and proximately caused the death of Paul E. Weatherholtz. Civil action was instituted by the administrator of the decedent's estate against Clark Transfer in the District Court for the Eastern District of Pennsylvania and a separate action against Trans Country in the District Court for the Eastern District of New York (Civil Action No. 69c309). Allstate, as the insurer of the lessor, Clark Transfer, called upon General Fire as the insurer of the lessee, Trans Country, to defend Clark Transfer on the theory that General Fire's policy provided the primary coverage under the "Truckmen's endorsement." General Fire refused to take over the defense on behalf of the lessor, Clark Transfer. Allstate settled the action against Clark Transfer with court approval upon paying $200,000 and obtaining a general release for Allstate, Clark Transfer, General Fire, Trans Country and the driver, Roland Thompson, being all parties involved. The New York action was thereafter discontinued.

The present action by Allstate against General Fire, C.A. No. 69–698, seeks a declaratory judgment that General Fire was the primary insurer for Clark

Transfer and that Allstate was the excess carrier, and further seeks to recover all counsel fees and costs of the defense. The maximum coverage by General Fire was $25,000.00. In addition to recovering the $25,000.00, Allstate claims approximately $50,000 in counsel fees and costs.

The companion action of Clark Transfer against Trans Country, C.A. No. 69–2252, is an indemnity claim by Clark Transfer which, in reality, by reason of subrogation is a claim by its insurer, Allstate, for the entire amount paid plus costs.

## DISCUSSION

■ All parties agree that were it not for the "Truckmen's endorsement," lessor's insurer, Allstate, would be the primary carrier and lessee's insurer, General Fire, would be the excess carrier. Although the owner's carrier is usually the primary insurer, under Pennsylvania law, the issue of primary coverage depends upon the wording of the insurance policies. Walters v. Dunlap, 250 F.Supp. 76, 80–81 (W.D.Pa. 1966), aff'd, 368 F.2d 118 (3rd Cir. 1966), citing Speier v. Ayling, 158 Pa. Super. 404, 45 A.2d 385 (1966). Because Allstate's limit of coverage was at least $200,000.00, if Allstate is the primary insurer, it is not entitled to recover from General Fire.

■ All parties also appear to agree that the purpose and effect of the "Truckmen's endorsement" is to reverse the normal liabilities of the respective insurers when the conditions of the endorsement come into play. This view is in accord with Walters v. Dunlap, *supra; Cf.* Carolina Casualty Ins. Co. v. Pennsylvania Threshermen and Farmers' Mutual Casualty Ins. Co., 327 F.2d 324 (3rd Cir. 1964).[1] The purpose of the "Truckmen's endorsement" is to place the responsibility on lessee's carrier. The party upon whom the Interstate Commerce Commission regulations impose a direct responsibility to the public is the lessee, and the insurance industry accepted this as a rationale for making lessee's carrier primarily liable. The reciprocal insurance coverage provision, which requires the owner's carrier to provide similar primary coverage for hired vehicles, is simply a self-protective clause for the insurance carriers to prohibit the vehicle owner from getting any free coverage.

■ The record is clear, and the parties agree that the requisite conditions from bringing the "Truckmen's endorsement" into operation were met. The lessee's policy expressly provided that the coverage under the endorsement is "primary insurance." General Fire contends, however, that in this case, it is relieved from what would be its normal obligation under the "Truckmen's endorsement" by reason of the terms of lease between Clark Transfer and Trans Country wherein the lessor, Clark Transfer, agrees to indemnify lessee against "any loss or damage resulting from the negligence, incompetence or dishonesty of the driver." Because General Fire's policy is liability only, it contends that its named insured, Trans Country, should be indemnified by Clark Transfer against any liability and that General Fire acquires the same right by subrogation.

General Fire's argument overlooks the coverage afforded under its policy to persons other than the named insured. Under the definition of "insured persons" are the following: (1) the named insured (Trans Country), (2) "any other person while using an owned automobile or a hired automobile with the permission of the named insured," provided such use is within the scope of such permission (under this clause the driver, Roland Thompson, was clearly an insured person), and (3) any other person or organization, but only with respect to

---

1. For a discussion of the history and purposes of the Truckmen's endorsement, see German, Hired Rented and Leased Vehicles—Long Haul Endorsements, Automobile Insurance Problems, 200 (Practicing Law Institute, 1968).

his or its liability because of acts or omissions of an insured under (1) or (2) above. (This clause would make Clark Transfer, as lessor, an insured person to the extent any liability could be imposed against it by reason of the negligence of the driver, Roland Thompson.) Thus, under the terms of the policy of General Fire, both the driver and the owner of the vehicle were insured persons, as well as the named insured, Trans Country. In the action against Clark Transfer brought in the Eastern District of Pennsylvania, Clark Transfer and the driver were insured persons under both the General Fire and Allstate policies. Under the "Truckmen's endorsement," General Fire expressly became the primary insurer for the "persons insured." The fact that Clark Transfer may have agreed to indemnify Trans Country against any loss, in no way helps General Fire in its defense against Allstate since the duty of General Fire was to insure Clark Transfer under the "Truckmen's endorsement" as one of the "persons insured" against liability.

This protection is wholly aside from the protection it also owed its named insured, who in fact suffered no loss in the actions and, therefore, did not have to rely on its indemnification agreement with Clark Transfer.

Allstate, the insurer for Clark Transfer as the named insured under the Allstate policy, expressly excluded any "liability assumed by the insured under contract or agreement." Allstate, not being a party to the lease agreement, was not bound by and did not insure against the indemnification granted by Clark Transfer to Trans Country. Even if, therefore, General Fire's argument that it insured Trans Country and as such was subrogated to Trans Country's position and could seek indemnification from Clark Transfer, is accepted, as between the two insurance carriers, General Fire could not recover from Allstate. The same holds equally true as to the action instituted in the Eastern District of New York against Trans Country. Had a judgment been there obtained by plaintiff (which did not in fact occur), General Fire, upon paying the limits of its coverage might have sought indemnification from Clark Transfer as subrogee of Trans Country. Although Clark Transfer might have been liable,[2] such would have been a liability assumed by contract which Allstate expressly excluded from coverage under its policy with Clark Transfer.

I conclude, therefore, that as between the two insurance carriers, the lessee's carrier, General Fire was the primary insurer under the "Truckmen's endorsement." This primary obligation was unaffected by the lessor's agreement to indemnify lessee. General Fire owed a direct duty to the lessor, Clark Transfer, as an "insured person." Allstate, as excess carrier only, paid what was General Fire's primary duty. Allstate is entitled to recover from General Fire to the maximum amount of General Fire's coverage. This is true, whether the right of recovery is grounded on a subrogation right (Clark Transfer being entitled to compel General Fire to protect Clark Transfer from liability) or right of indemnity, or on insurance law that as between two carriers, where there is a liability, the primary insurer shall first be called upon up to the limits of the policy and if the excess carrier is required to pay the full liability it shall be entitled to reimbursement from the primary carrier.

■ On the claim for counsel fees and costs, somewhat different obligations exist, and the cases are by no means unanimous. Both policies provide that the insurer "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations are

---

2. See Kramer v. American Fidelity and Casualty Company of Richmond, Virginia, 165 A.2d 924 (Mun.Ct. of Appeals for D.C., 1960) where the insurance carrier for the lessee was granted recovery against the lessor-indemnitor.

groundless, false or fraudulent." The law, in general, imposes upon the insurer a duty to defend any legal action against its insured. Since Clark Transfer and Trans Country were both "insured persons" under both policies as either the named insured or covered under the "omnibus" or "Truckmen's endorsement" clauses, both carriers had a duty to defend both Clark Transfer and Trans Country.

One line of cases holds that the duty to defend is a personal duty owed by the insurer to his insured and that where more than one company insures a party, all who insure owe that duty to defend, without any right of subrogation or contribution. Thus, each insurer would bear its own costs without right of contribution. United States Fidelity and Guaranty Co. v. Tri-State Insurance Co., 285 F.2d 579 (10th Cir. 1960), holds that the excess carrier cannot recover fees and costs from the primary carrier even where there is a wrongful refusal on the part of the primary carrier to defend. Inferentially, at least, the Fifth Circuit so held in American Fidelity and Casualty Co. v. Pennsylvania Threshermen and Farmers' Mutual Casualty Ins. Co., 280 F.2d 453, 459–460, n. 11 (5th Cir. 1960). This circuit in the case of Continental Casualty Co. v. Curtis Publishing Co., 94 F.2d 710 (3rd Cir. 1938), denied recovery for counsel fees and costs incurred by the excess carrier of Curtis against the primary carrier (the owner's vehicle carrier).

Other courts have held to the contrary, especially where there is a demand by the excess carrier to the primary carrier to take over the defense. *E. g.,* American Surety Co. of New York v. Canal Insurance Co., 258 F.2d 934 (4th Cir. 1958). In United States Fidelity & Guaranty Co. v. Millers Mutual Fire Ins. Co. of Texas, 396 F.2d 569, 573, 573 n. 4 (8th Cir. 1968), where the question was reserved for the lower court, the court noted that Minnesota had a rule of "no contribution," California had a rule of contribution, and Missouri allowed complete indemnity in some cases and pro rata contribution in others. In Crowley's Milk Co. v. American Mutual Liability Insurance Co., 313 F.Supp. 502 (E.D.N.Y.1969), Judge Dooling, without deciding the issue of costs and fees, discussed the split in the various courts and expressed preference for the view permitting recovery of costs and counsel fees where there has been a demand by the excess carrier upon the primary carrier to defend. The decided cases are all based on diversity of citizenship and, therefore, follow state law. Consequently, the split of authorities is not among the circuit courts, but rather the various state courts.

■ In the present case, because of the facts, recovery for counsel fees and costs will be denied. Both insurance carriers, at least for purposes of the present case, concede that the driver was negligent and proximately caused the death of the injured party. Based on this concession and to some extent the substantial settlement figure, it is probable that there never was any substantial possibility of a defense on the merits or an ultimate judicial finding of non-liability. This being so, and the maximum coverage of the primary carrier, General Fire being only $25,000.00, it would have been readily apparent to Allstate that Allstate should protect its own interests by extensive investigation and employment of counsel, with the strong possibility that it would eventually have to pay the major portion of any settlement or judgment. It seems clear that irrespective of any activity on the part of General Fire, Allstate would have incurred most, if not all, of the expenses and fees it presently claims. It is not insignificant to note that Allstate claims its costs and counsel fees are approximately $50,000.00. Although the amount of damages is not presently before me, it is obvious that in a case of apparent liability, no reasonable insurance company would expend $50,000.00 in fees and investigative costs where its maximum coverage is only $25,000.00.

Neither the facts nor the complaint assert that any of the taxable record costs were paid by Allstate, so that no decision need be made as to whether it might be able to recover such of those costs it paid,[3] which would present a somewhat different situation than reimbursement for the investigative costs, counsel fee, and the non-record costs.

I conclude as to the costs and counsel fees, irrespective of whether the case of Continental Casualty Co. v. Curtis Publishing Co., 94 F.2d 710 (3rd Cir. 1938), is controlling on the issues, that under the facts of this case, Allstate is not entitled to reimbursement from General Fire for any of the investigative costs, counsel fees, or other non-record costs it incurred in the defense and settlement of the cases.

██ ██ The action of Clark Transfer, Inc. v. Trans Country Van Lines, Inc., Civil Action 69–2252, seeks, by way of subrogation, recovery by Allstate against Trans Country and its insurer, General Fire. Clark Transfer's claim is based on the contention (a) the operator of the vehicle was the servant of Trans Country, (b) the vehicle was under the exclusive control of Trans Country, and (c) Trans Country is liable as the common carrier for the negligence of the driver both under the law and by the express terms of the lease.

The action assumes that the settlement was paid by Allstate on behalf of Clark Transfer. It is not necessary to decide whether Allstate paid on behalf of Clark Transfer or on behalf of Trans Country under its omnibus insured clause as an excess carrier. Even if plaintiff's argument is accepted that the payment was made by Clark Transfer, its right to indemnity or contribution is expressly barred by the terms of the lease wherein Clark Transfer agrees to indemnify Trans Country against any loss or damages resulting from the negligence, incompetence or dishonesty of the driver.

Counsel for plaintiff argues that the indemnification clause is ambiguous and repugnant to the legal duty of the lessee as a common carrier to be responsible to the public for negligent injury caused by the truck driver. This legal duty was expressly provided for in the lease. The only ambiguity in the indemnification clause of the lease is because plaintiff claims that it means something less than what it clearly states.[4] That Trans Country could not contract away its future tort liability, especially such as is statutorily imposed on Trans Country as a common carrier, needs no citation of authority. However, there is no legal or policy reason that would prohibit Trans Country from obtaining an indemnifying agreement from the party who is supplying the equipment and the driver. Kramer v. American Fidelity and Casualty Company of Richmond, Virginia, *supra*, n. 2. If anything, such an agreement gives additional security to the public. As between the parties the indemnification agreement is perfectly valid, but as between the respective insurance carriers, it will not change their liabilities. Judgment will be entered in favor of defendant in Civil Action 69–2252.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter of the actions.

2. The action for a declaratory judgment is appropriate, and the parties in Civil Action 69–698 are entitled to a declaratory judgment.

3. General Fire was the primary insurer and Allstate the excess insurer

---

3. Frequently in settlements each party to the settlement pays the record costs each has separately incurred without recovery from the other.

4. As a make-weight argument, plaintiff claims that since the lease was on a form supplied by lessee, it should be construed against lessee. I find this of minor significance since both parties to the lease were trucking companies and on a completely equal footing.

against liability arising out of the operation of the tractor-trailer under lease dated March 29, 1968 between Clark Transfer, as lessor, and Trans Country, as lessee.

4. General Fire is obligated to reimburse Allstate up to the maximum coverage afforded by General Fire ($25,000) for the settlement negotiated by Allstate, provided the settlement in excess of $25,000 was fair and reasonable.

5. Allstate is not entitled to recover from General Fire for any non-record costs, or any legal fees, Allstate incurred in investigating, defending and settling the claims arising out of the operation of the tractor-trailer under the aforesaid lease.

6. Clark Transfer is barred by reason of the indemnification clause in the aforesaid lease, from recovering from Trans Country.