**MUSTANG TRANSPORTATION COMPANY, et al.**

v.

**RYDER TRUCK LINES, INC., et al.**

Civ. A. No. 77–1620.

United States District Court,
E. D. Pennsylvania.

Sept. 28, 1981.

Thomas J. Finarelli, Philadelphia, Pa., for plaintiffs.

Jan E. DuBois, White & Williams, Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This lawsuit arose out of a collision between an automobile and a tractor-trailer, which occurred on December 7, 1969 on U.S. Route 22 in Juniata County, Pennsylvania. Edward Renzi, a passenger in the car, died as a result of injuries suffered in the accident while Charles Benedict and Daniel Mattia, the driver of the car and another passenger, were injured. The estate of Mr. Renzi instituted an action against Henry Crowder, the driver of the tractor-trailer and the owner of the tractor portion; Mustang Transportation Company ("Mustang"), owner of the trailer portion; and R.L. Dease, Vice-President and Secretary of Mustang. Ryder Truck Lines ("Ryder"), which had hired the Crowder/Mustang tractor-trailer to deliver a load from New York to Michigan, was added to the initial lawsuit as a third-party defendant. Messrs. Benedict and Mattia brought another action against Henry Crowder and R. L. Dease. Subsequently, the two cases were consolidated and eventually were settled for $117,500.00 pursuant to a court-approved stipulation.

Under the terms of that stipulation, Ryder and its insurer, Liberty Mutual Insurance Company ("Liberty") agreed to pay one half of the settlement amount, and Mustang, its insurer, Canal Insurance Company ("Canal") and R.L. Dease agreed to pay the other half. However, the parties stipulated that these payments did not constitute admissions of liability or of proportionate responsibility. Pursuant to the agreement, the issues of liability and insurance coverage were to be determined by a court in another suit. Plaintiffs Crowder, Mustang, Canal and Dease brought this diversity action in order to resolve these questions, and defendants Ryder and Liberty have counterclaimed. The matter has been submitted to me for trial without a jury. This memorandum constitutes findings of facts and conclusions of law as required by Fed.R.Civ.P. 52(a).

## I.

For purposes of determining the issues of liability and insurance coverage, the parties have stipulated to the following facts. The acts and omissions of plaintiff Henry Crowder were the proximate cause of the inju-

ries and damages suffered by Renzi, Benedict and Mattia. At the time of the accident, Mr. Crowder was transporting a load from New York to Michigan pursuant to a one-way lease agreement with Ryder. (Exhibit A, Amended Complaint) This lease agreement identifies "Mustang Transportation-Henry Crowder" as the lessors and is signed by Crowder on their behalf. The goods in this haul were commodities regulated by the Interstate Commerce Commission ("ICC"); Mustang did not have an ICC permit to haul regulated commodities in either Pennsylvania or New Jersey. The truck driven by Crowder consisted of a tractor portion owned by him and a trailer portion owned by Mustang. He was operating the truck under a lease agreement between Mustang and him, which was in effect at the time of the accident. In the trip preceding the one during which the accident occurred, Crowder had transported on behalf of Mustang goods from Georgia to New Jersey. On the instructions of R.L. Dease, Vice-President of Mustang and another plaintiff in this case, Crowder sought a load for the return trip to Georgia from the Lester Newton Trucking Company. It did not have a load but directed Crowder to Ryder, which did have one. Without speaking to anyone at Mustang, Crowder entered into, on behalf of Mustang and himself, the one-way lease agreement with Ryder described previously. On prior occasions, Crowder and others driving vehicles owned or leased by Mustang had entered into contracts with third parties for hauling goods without first obtaining the permission of Mustang. Also, in the past, when Dease was unable to find return loads for Crowder and other drivers of vehicles owned or leased by Mustang, he told them that they could try to find other loads to haul on behalf of Mustang. Mustang did not learn of the lease agreement with Ryder signed by Crowder until December 8, 1969, the day after the accident. Ryder paid Mustang for the use of the tractor-trailer in accordance with the agreement; in turn, Mustang paid Crowder pursuant to the terms of the lease between them.

## II.

The first issue to be resolved is the nature of the relationship of Henry Crowder to Mustang and to Ryder at the time of the accident. Disclaiming liability for the acts of Crowder, Mustang and Ryder each denies that he was its agent or employee (servant)[1] at the time of the accident. In fact, each contends that the other was his principal or employer (master).

The Restatement (Second) of Agency defines agency as:

> . . . the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Restatement (Second) of Agency, § 1 (1957).

The one for whom action is to be taken is the principal, and the one who is to act is the agent. *Id.* The Restatement characterizes a servant as "a species of agent" (Comment a to § 2) and defines it as:

> . . . an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. *Id.*, § 2

An agent who is not a servant is an "independent contractor." An independent contractor is one who "contracts to act on account of the principal." (Comment b to § 2 of the Restatement (Second)). The distinction between the relationship of master/servant and that of principal/independent contractor, according to the Restatement, is that in the former situation, the master is responsible to third persons for the physical conduct of his servant. *Id.* Since this case requires a determination of liability for the physical conduct of Crowder at the time of the accident, I must decide

---

1. Master and servant are common law terms for employer and employee. Comment d to § 2 of the Restatement (Second) of Agency.

whether, as to Mustang and to Ryder, Crowder acted as a servant or as an independent contractor.[2] I begin with an analysis of the relationship between Crowder and Mustang.

As noted earlier, at the time of the accident, the relationship between Mustang and Crowder was defined by a lease agreement. Under Georgia law,[3] one's status as servant or independent contractor turns on whether the employer has the power to control the manner in which the work is executed or whether he merely has the right to require certain results. *Fidelity & Casualty Co. v. Windham*, 209 Ga. 592, 74 S.E.2d 835, 837 (1953). The Georgia Court of Appeals has stated the following test:

> If the employer has or assumes the right to control how the work shall be done, as distinguished from the mere right to require certain definite results in conformity to the contract, the relation is that of employer and servant rather than that of employer and independent contractor.

*Employers Mutual Liability Insurance Co. v. Johnson*, 104 Ga.App. 617, 122 S.E.2d 308, 309 (1961)

Paragraph 9 of the lease agreement describes Crowder as an independent contractor. If a written contract describes a party as an independent contractor, it is presumed that he is as designated. *Family Life Assurance Co. v. Welch*, 120 Ga.App. 334, 170 S.E.2d 703, 707 (1969). However, if other provisions of the agreement reveal that the employer has retained control over the time, manner and method of execution of the work, this presumption will not apply. *A. L. Williams & Associates v. Sun Life Assurance Co.*, 153 Ga.App. 371, 265 S.E.2d 285 (1980).

An examination of the lease agreement, which was drafted by Mustang, reveals that despite the description of Crowder as an independent contractor, Mustang maintained sufficient control over the execution of Crowder's work to establish a relationship of master and servant. For example, paragraph 10 of the agreement states: "The owner [Crowder] agrees that said vehicle(s) shall be operated in accordance with all rules, policies and practices of Mustang." Paragraph 2 provides in relevant part: "Any driver (including the owner if he shall drive himself) shall comply with all safety regulations of Mustang, the Interstate Commerce Commission and the United States Department of Transportation, at all times." Similarly, Paragraph 5 states:

> Owner [Crowder] hereby agrees that no freight will be transported on said vehicle(s) while being used in the transportation of freight other than at the direction of Mustang, or with the knowledge and consent of Mustang, and that all freight transported thereon or therein will be transported pursuant to freight bills and bills of lading made out by or for and in the name of Mustang, and that otherwise the owner waives any right under this contract, including payment for transportation.

While Mustang may have wished to limit its liability by describing Crowder as an independent contractor, these provisions show that it maintained too much control over the manner in which Crowder operated the tractor-trailer and transported freight to

2. Under Georgia law (see discussion in note 3 *infra* for why this law applies), the general rule is that an employer is not liable for the negligent acts of an independent contractor employed by him. *NEDA Constr. Co. v. Jenkins*, 137 Ga.App. 344, 223 S.E.2d 732 (1976).

3. In a diversity action, the federal court must look to the choice of law rules of the forum state to ascertain what law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The relationship between Mustang and Crowder is defined primarily by a contract of employment, a lease agreement. Under Pennsylvania choice of laws rules, in a contract action the method for determining the applicable law combines "grouping of contacts," as prescribed in the Restatement (Second) of Conflicts of Law, and an "interest analysis." *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978). Using this approach, it appears that Georgia law would apply since the lease agreement was executed in Georgia between a Georgia corporation and a Georgia resident.

create a relationship of principal and independent contractor.

■ Mustang denies that it was the employer or principal of Henry Crowder when the accident occurred because at the time he was transporting a load for Ryder. The parties have stipulated that a lease agreement existed between Crowder and Mustang at the time of the accident. Further, they have stipulated that although Crowder entered into the one-way lease agreement with Ryder without the express knowledge and permission of Mustang, in the past in similar situations Mustang has told Crowder to find return loads to haul on its behalf. Moreover, it is agreed that Mustang accepted payment from Ryder for the use of the tractor-trailer as provided in the one-way lease, and, in turn, Mustang paid Crowder for the trip in accordance with the terms of the lease between them. Therefore, even if the prior custom of Mustang did not confer authority on Crowder to enter into the agreement with Ryder on behalf of Mustang, and I believe it did, Mustang's acceptance of the benefits of that agreement constituted a ratification of Crowder's agency. *See Advance Mortgage Corp. v. Guaranty Title Insurance Co.*, 416 F.2d 451 (5th Cir. 1969); *Causey v. Gulf Life Insurance Co.*, 62 Ga.App. 378, 8 S.E.2d 535 (1940).

■ Having determined that Crowder was the servant of Mustang, I now must decide Crowder's relationship to Ryder. At the time of the accident, Crowder was transporting goods from New York to Michigan for Ryder pursuant to a one-way lease agreement. The question is whether under the terms of that agreement Crowder was acting as a borrowed servant or as an independent contractor. Under Georgia law,[4] in order to qualify as a borrowed servant (em-

ployee), the evidence must show that "(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant." *Six Flags Over Georgia, Inc. v. Hill*, 247 Ga. 375, 276 S.E.2d 572, 574 (1981) (quoting *United States Fidelity & Guaranty Co. v. Forrester*, 230 Ga. 182, 196 S.E.2d 133 (1973).

■ The lease agreement entered into by Crowder on behalf of Mustang and himself with Ryder describes Crowder and Mustang as the lessor and Ryder as the lessee. Its provisions do not vest in Ryder complete control and direction of Crowder while he was transporting goods for Ryder. In fact, the agreement does not give Ryder any control over the manner in which Crowder was to operate the truck. It expressly limits Ryder's control to the leased vehicle:

> The leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee [Ryder] and that the Lessee [Ryder] assumes full responsibility in respect to the equipment it is operating to the public, the shippers and the INTERSTATE COMMERCE COMMISSION.

Turning to the second part of the test for borrowed servants stated in *Six Flags, supra*, there is nothing in the lease agreement between Ryder and Crowder (and Mustang) which divested Mustang of any control it had over Crowder. As to the third element of the *Six Flags* test, the one-way lease agreement provides:

> In the event that equipment referred to herein is not in proper mechanical condition or for any other reason is deemed inadequate to the Lessee [Ryder], then the Lessee [Ryder] shall have the authority to transfer any shipment from this

---

4. In ascertaining the nature of the relationship between Crowder and Ryder, Georgia law would appear to govern. Both Crowder and Mustang are citizens of Georgia. Crowder's authority to enter into an agreement with Ryder was created in Georgia, and ultimately Mustang ratified the agreement there.

Without explaining why, defendants urge that either Florida or Massachusetts law should

control. However, the only connection I can discern between this case and Florida is that Ryder is a citizen of that state. Similarly, the only connection with Massachusetts is that Liberty Mutual is a citizen. These contacts are not sufficient under the standard set forth in *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978).

equipment and handle same according to the best judgment of the Lessee [Ryder]. This language focuses on Ryder's control over the shipment and not over the driver. Therefore, applying the three-part test for a borrowed servant set forth in the *Six Flags* case, Crowder does not qualify as a borrowed servant of Ryder under Georgia law. Because Ryder merely had the "... right to require certain definite results in conformity with the contract ...", *Employers Mutual Liability Insurance Co. v. Johnson*, 104 Ga.App. 617, 122 S.E.2d 308, 309 (1961), at the time of the accident Crowder's relationship with Ryder was that of independent contractor and principal under Georgia law. Thus no basis for liability of Ryder for the negligence of Crowder arises under state tort law.

However, citing *Simmons v. King*, 478 F.2d 857 (5th Cir. 1973), Mustang argues that pursuant to ICC regulation 49 C.F.R. § 1057.4 Ryder, as lessee of the truck, was the statutory employer of Crowder and therefore was liable for his negligence as a matter of law. 49 C.F.R. § 1057.4(a)(4) requires that a carrier which leases a motor vehicle not owned by it undertake in the lease "exclusive possession, control and use of the equipment" and assume complete "responsibility in respect thereto."

While courts, including the Fifth Circuit in *Simmons, supra*, have held that § 1057.4 imposes liability on the lessee of a motor vehicle for harm done to a member of the public or to a shipper as a result of the operation of the leased vehicle, they have not found that the regulation imposes exclusive liability on the lessee and its insurer. In a case involving in part the question of liability under § 1057.4, the Third Circuit observed:

> While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of

otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties.

*Carolina Casualty Insurance Co. v. Insurance Company of North America*, 595 F.2d 128, 138 (3d Cir. 1979).

49 C.F.R. § 1057.4(a)(4) required that Ryder, as lessee, assume exclusive possession, control and use of the tractor-trailer as well as full responsibility for its operation, and under a provision of the one-way lease agreement, Ryder did just that.[5] Under the principles stated in *Simmons, supra* and other decisions, Ryder would be liable to members of the public and to shippers who were damaged by the negligence of Crowder in the operation of the truck during that trip. That is, if a member of one of those groups (the public or shippers) were seeking to recover for harm caused by the negligence of Crowder, Ryder would be vicariously liable as the statutory employer of Crowder pursuant to 49 C.F.R. § 1057.4(a)(4). However, Ryder's responsibility to the public or to any shipper is not at issue in this case. Rather, the question now before me is how financial liability for the accident is to be divided ultimately amongst the lessor and the lessee and their insurers. As the Third Circuit pointed out in *Carolina Casualty Insurance, supra*, § 1057.4 does not prohibit a lessor and lessee from agreeing between themselves to allocate financial risk in a certain manner. A clause appearing in the one-way lease agreement provided that Mustang and Crowder would indemnify Ryder for all losses resulting from the use of the tractor-trailer. I turn now to an analysis of that provision and its effect on the liabilities of the parties in this case.

### III.

Ryder contends, I believe correctly, that it is not liable for the acts and omissions of Henry Crowder because of the indemnity

---

5. The lease provides in relevant part:
   It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee [Ryder] and that the Lessee [Ryder] assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION.

clause contained in the one-way lease. That clause states:

> It is agreed that Lessor [Mustang and Crowder] will carry acceptable Public Liability and Property Damage Insurance. Lessor [Mustang and Crowder] agrees to reimburse and otherwise indemnify Lessee [Ryder] for any and all losses sustained by Lessee [Ryder] resulting from the use of the aforesaid equipment.

■ Plaintiffs Mustang and Crowder first argue that this provision is not valid because it is violative of 49 C.F.R. § 1057.4. They acknowledge that the United States Supreme Court has upheld one type of indemnity clause in the face of a similar challenge. In *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 41, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975), the Supreme Court found that an indemnification clause directed to the lessor's negligence does not conflict with the regulations of the ICC. Plaintiffs contend that the indemnity clause found in the one-way lease agreement between Ryder and them is not the type of provision found permissible in *Transamerican Freight Lines, supra,* as it is not directed specifically at the negligence of the lessors. While I would agree that the indemnity clause here is more broad in scope than the one found enforceable in the *Transamerican* decision, I do not believe that fact compels a conclusion that the clause is invalid and not enforceable as to this transaction involving Crowder's negligence. There is nothing in that decision which suggests that a provision like the instant one would be violative of 49 C.F.R. § 1057.4(a)(4). As I noted previously, the purpose of that regulation is to protect members of the public and shippers by placing primary responsibility for the safe operation of a leased vehicle on the motor carrier lessee. The issue now before me is how the financial liability for the accident ultimately must be allocated, which is a different question.

■ Mustang and Crowder also argue that the clause is not valid because it is "sweeping" and "all inclusive" and fails to state specifically that the indemnitee, Ryder, will be indemnified for its own negligence and that of one of its employees. I disagree. In *Jones Truck Lines, Inc. v. Ryder Truck Lines, Inc.,* 507 F.2d 100 (6th Cir. 1974), the Sixth Circuit upheld an indemnity clause identical to the instant one against the same challenge. The Court stated:

> . . . we think it is clear from the indemnity contract that the parties intended that Ryder (indemnitee) should be reimbursed for all losses which it sustained resulting from its use of the equipment and while under its exclusive dominion and control. In unequivocal terms the contract provides that the equipment shall be in the 'exclusive possession, control and use' of the lessee and that the lessee assumes full responsibility in respect to the equipment 'to the public.' The lessor, on the other hand, agrees to carry acceptable Liability and Property Damage insurance and, 'to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment.' Clearly this language is susceptible of no meaning other than that the lessor was to indemnify the lessee for all losses sustained by it and resulting from its operation and use of the equipment, whether caused by the lessee's own acts of negligence or otherwise.

507 F.2d at 103.

I share the view of the Sixth Circuit that this clause should be construed as providing indemnity for the lessee even for its own negligence.[6]

## IV.

■ The next issue to be resolved is whether the insurance policies of either or both Mustang and/or Ryder provide cover-

---

**6.** *See also Carolina Freight Carriers Corp. v. Pitt County Transportation Co.,* 492 F.2d 243 (4th Cir. 1974); *Allstate Insurance Co. v. Alterman Transport Lines, Inc.,* 465 F.2d 710 (5th Cir. 1972). *But cf. Alford v. Major,* 470 F.2d 132 (7th Cir. 1972) (finding a similar indemnity clause violative of ICC regulations)

age for the accident in Juniata County, Pennsylvania, involving the tractor-trailer driven by Henry Crowder. Plaintiffs claim that Crowder is an insured under the terms of Ryder's insurance policy even if Ryder were found not to be liable for the negligence of Crowder. First, they allege that Crowder was covered under Part II of the Liberty policy, which is entitled "Comprehensive Automobile Liability Insurance." They point to the following portion of the "persons Insured" section of Part II, which states:

> Each of the following is an *insured* under this insurance to the extent set forth below:
>
> (c) any other person while using an owned automobile or a hired automobile with the permission of the *named insured*, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . .

Plaintiffs concede that a separate provision in Part II limits hired automobile coverage to excess insurance and that the policy as it regards hired vehicles is modified by a "truckmen's endorsement," in the Liberty policy labeled "Truckmen-Form A."[7] The purpose of a truckmen's endorsement is to place responsibility on the insurer of a lessee of a hired vehicle, *Allstate Insurance Co. v. General Fire and Casualty Co.*, 348 F.Supp. 682, 685 (E.D.Pa.1972),[8] and the

truckmen's endorsement in the Liberty Mutual policy does just that. However, as defendants point out and plaintiffs agree, this truckmen's endorsement contains the following reciprocity requirement:

> (b) Except with respect to the named insured or an employee thereof, but subject otherwise to the 'Persons Insured' provision, the insurance does not cover as an insured any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others under any of the following conditions:
>
> . . . . .
>
> (3) If such person or organization so engaged is insured under an automobile liability insurance policy which afford coverage for automobiles hired by such person or organization but which does not insure on a direct primary basis the owners of such automobiles and the agents and employees of such owners while such automobiles are being used exclusively in the business of such person or organization and over a route such person or organization is authorized to serve by federal or public authority; . . .

provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall be deemed not to be an employee of the named insured.

---

**7.** However, as defendants point out, a subsequent provision in the "persons Insured" section of the Liberty policy would appear to exclude Crowder. Subparagraph (ii) states that "The owner . . . of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner" is not insured under the policy. Plaintiffs cite *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131 (8th Cir. 1974), as support for their claim that Crowder is covered under paragraph (c) in spite of the language found in subparagraph (ii). The *Wellman* case involved a similar policy and the question of whether the policy would cover an owner of a hired automobile. The *Wellman* court resolved the apparent conflict between the two provisions in favor of coverage. Presented with the same issue, however, several other courts, in cases cited by the defendants, have reached the contrary conclusion. *See, e. g., Gilkey v. Andrew Weir Insur-*

*ance Company*, 291 F.2d 132 (9th Cir. 1961). However, I need not resolve this question because, as the parties recognize, coverage in this situation is controlled by the truckmen's endorsement in Ryder's insurance policy. Therefore, it is immaterial whether the inconsistency between paragraph (c) and subparagraph (ii) in that policy is resolved in favor or against coverage.

**8.** In *Allstate*, Judge Van Artsdalen noted:

> The purpose of the "Truckmen's endorsement" is to place the responsibility on lessee's carrier. The party upon whom the Interstate Commerce Commission regulations impose a direct responsibility to the public is the lessee, and the insurance industry accepted this as a rationale for making lessee's carrier primarily liable.
> 348 F.Supp. at 685.

In substance, this clause states that Liberty will give primary coverage to a vehicle leased by Ryder from another company only if that company's insurer provides primary coverage to vehicles which it leases from another company. Plaintiffs offer several theories for why Crowder is not excluded by this reciprocity clause.[9] First, citing an article by Edward C. German entitled "Hired, Rented and Leased Vehicles—Long Haul Endorsements," they argue a reciprocal coverage clause cannot apply to Crowder as he is not a trucking company but merely a one man, one truck operation. That article asserts that a truckmen's endorsement is aimed at relationships between truckers and if a lessor is not a trucker he will not be bound by the reciprocity requirement in such an endorsement to the lessee's insurance policy. As defendants point out, this argument is fallacious because at the time of the accident Crowder was not acting as a one man truck operation but as a servant of Mustang. Under the terms of the reciprocity clause found in the Liberty truckmen's endorsement, Mustang, as Crowder's employer, was required to extend primary coverage when it was the lessee.

Plaintiffs next argue that the reciprocity clause in the Liberty policy does not preclude coverage because Mustang's insurance policy does insure, on a primary basis, vehicles leased by Mustang from others. First, they note that the definition of insured contained in the Canal policy includes

... any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

Mustang contends that the owner lessor of a vehicle leased by Mustang would fall into the category of a "person legally responsible" for the vehicle's use.

Plaintiffs acknowledge that the Gross Receipts Endorsement to the Canal policy provides:

2. It is further understood and agreed with respect to hired equipment that should any other like, valid and collectible insurance issued in the name of the owner or lessor, or in favor of the named assured herein, exist, this policy becomes excess over and above such valid and collectible insurance.

They argue, however, that this endorsement does not render coverage under Canal excess coverage because most insurance policies of lessors contain truckmen's endorsements; therefore, in most circumstances the lessor will not have "like" insurance and the coverage under the Canal policy will not become "excess."

Defendants disagree with this interpretation of the Canal policy. They argue that paragraph (c) in the section of the policy entitled "Exclusions" establishes that the policy does not extend primary coverage to tractors or trailers leased by Mustang from others.[10] Ryder and Liberty also contend that Mustang has misinterpreted the meaning of the phrase "other like, valid and collectible insurance," found in paragraph (2) of the Gross Receipts Endorsement to the Canal policy. It is the defendants' position that since paragraph (c) of the "Exclusions" section of the Canal policy denies coverage for tractors or trailers leased by Mustang from others, there is no primary Canal coverage to which "other like, valid and collectible insurance" can be compared and the word "like" in that endorsement cannot be defined in relation to whether a particular insurance coverage is excess or primary. Defendants argue, I believe correctly, that "other like, valid and collectible

9. The courts have routinely found such reciprocity requirements in truckmen's endorsements to be valid. *See, e. g., Allstate Insurance Co. v. General Fire and Casualty Co., id.*

10. Paragraph (c) of "Exclusions" states:
This policy does not apply:

under Coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company.

insurance" means any insurance provided by the owner or lessor of a vehicle leased by Mustang covering that hired vehicle. Under this interpretation, paragraph 2 of the Canal "Gross Receipts Endorsement" would, in all circumstances, give only excess coverage for vehicles hired by Mustang. Therefore, since the Canal policy gives only excess coverage, the reciprocity clause in Ryder's policy would preclude coverage for Crowder.

## V.

Ryder claims that its status in the underlying suits is yet another reason why it is not liable to the plaintiffs in this case. In the wrongful death action brought by the estate of Edward Renzi, Ryder was a third-party defendant. In addition, in the stipulation entered into by counsel when that case was settled, it was agreed that the ultimate liability of Ryder was to be determined on the basis of its status as third party defendant. Therefore, Ryder asserts that it cannot be liable directly to the original plaintiffs and can only be liable to the original defendants, Mustang and Dease, by way of contribution. Further, it would be liable for contribution, Ryder argues, only if it were determined that Mustang and Ryder were joint employers of Crowder. I have found that Mustang was sole master or employer of Crowder at the time of the accident. Ryder also argues that it is not liable to Crowder for indemnity as indemnity is given by one who is primarily liable to one who is secondarily liable. Under the stipulation of facts, Crowder is the primary tort-feasor. Plaintiffs have conceded that if I were to find that Mustang was the sole employer of Crowder at the time of the accident, Ryder's assessment that it was not liable for contribution or indemnity would be correct. (p. 7 of plaintiffs' reply brief) For the reasons set forth above, I will enter judgment in favor of all the defendants and against all the plaintiffs.

In addition, plaintiffs have agreed that if I found Mustang liable for the actions of

Crowder, the Gross Receipts Endorsement to Mustang's insurance policy would provide coverage for the accident. *Id.* Having found that Mustang was the employer of Crowder and thus vicariously liable for his acts and the parties having agreed that if I found Mustang liable, there would be coverage for the accident under Mustang's insurance policy, on the counterclaim, I will enter judgment in favor of all the defendants and against plaintiffs Mustang, Canal and Crowder.[11]

---

**11.** Although the counterclaim includes claims against R. L. Dease, there is no evidence of record which would provide a basis of liability against him.