N. NORMAN SCHUTZMAN, trading as SNELLING AND SNELLING, Plaintiff,

*vs.*

JOHN M. GILL and CASEY EMPLOYMENT SERVICE, INC., a Delaware corporation, Defendants.

*New Castle, Aug. 27, 1959.*

*Joseph H. Flanzer,* Wilmington, for plaintiff.

*Arthur J. Sullivan,* of Morris, James, Hitchens & Williams, Wilmington, for defendant, John M. Gill.

*Ernest S. Wilson, Jr.,* of Morford, Young & Conaway, Wilmington, for defendant, Casey Employment Service, Inc.

SEITZ, Chancellor: N. Norman Schutzman, trading as Snelling and Snelling ("plaintiff"), brought this action to enjoin the defendant, John Gill ("defendant") from continuing his employment with the defendant, Casey Employment Service, Inc. ("Casey"). Plaintiff's request is based upon a provision of an agreement signed by defendant and plaintiff to the effect that defendant would not within a period of one year following termination of his employment with plaintiff "engage in the employment agency business for himself or association in any capacity with any other person or firm engaged in a similar business to Snelling and Snelling, * * *."

It is conceded that defendant is now working for Casey and that Casey is a firm engaged in a business similar to Snelling's.

The plaintiff is an independent entity but has a franchise from a national employment service known as Snelling and Snelling, Incorporated of Philadelphia, Pa. ("Snelling"). The plaintiff's predecessor

employed defendant in April 1956. The plaintiff purchased the Wilmington office about January 2, 1957, and continued defendant's employment. About August 16, 1957, at plaintiff's request, the defendant signed a written document containing the covenant which plaintiff now seeks to enforce.

About January 15, 1959, defendant gave the plaintiff notice that he intended to terminate his employment and he did terminate it about February 13, 1959. About March 2, 1959, defendant was employed by Casey and continues to be so employed. This action resulted.

Defendant first contends that the agreement is not binding because it was not seasonably executed by Snelling. Below the signature lines it was recited that the agreement was to be executed in triplicate by the employee and the employer; that all copies were to be delivered to Snelling at Philadelphia for execution.

Although defendant suggests to the contrary, I am satisfied that it was signed by plaintiff within a reasonable period after it was executed by defendant. It is agreed, however, that the agreement was not sent to Snelling for execution until after the defendant terminated his employment with plaintiff. On the basis of this fact defendant contends that the contract is not binding on him.

The law in this general area is set forth in *Deputy & Co. v. Hastings*, 2 *W.W.Harr.* 345, 32 *Del.* 345, 123 *A.* 33, 34. There the Superior Court, through Judge Rodney, stated that,

"* * * when a contract is reduced to writing and a number of persons are named therein as parties, a portion of whom sign the same and a portion of whom do not affix their signatures, the question of whether or not those who have signed the contract are bound thereby is to be determined by the intention and understanding of the parties at the time of the execution of the instrument."

The court goes on to consider some of the more particular applications of this rule and states that,

"* * * in the absence of testimony showing that execution by all of the parties was intended or some other reason or con-

sideration calling for joint execution, the signatures of part of those named in the instrument bind them though others named therein have not signed the same."

■ Since Snelling did not sign the agreement before defendant terminated his employment it is clear that Snelling could not enforce this agreement against Gill. But plaintiff has a substantial property interest of his own which is entitled to protection and he signed the agreement seasonably. Defendant does not suggest that the covenant is invalid by virtue of any public policy or rule of contract law other than that herein considered. Moreover, defendant worked many months after its execution.

Contrary to defendant's testimony, it is my conclusion that it was not agreed or intended that the agreement should be executed by Snelling before becoming effective. Considering the provisions of the agreement alone, it is clear that the signature of Snelling was called for solely so that it might enforce its provisions against defendant. Nowhere in the agreement is defendant given any rights against Snelling.

I therefore conclude that the agreement is enforceable by plaintiff against defendant despite the failure of Snelling to execute the agreement seasonably.

■ Defendant next contends that the plaintiff does not come into equity with clean hands. Defendant says plaintiff prevented him from obtaining employment in the Philadelphia office of Snelling, even though such employment would not have violated his agreement. Had the evidence shown that Snelling unconditionally agreed to employ defendant after he terminated his services with plaintiff there might well be merit to defendant's contention. However, the evidence shows that Snelling only agreed to employ defendant if it was acceptable to plaintiff. Plaintiff refused to give such approval and I do not think such refusal can be considered inequitable action under the circumstances.

I therefore conclude that plaintiff is not prevented from bringing this action because of the clean hands doctrine.

■ Defendant next contends that plaintiff breached his contract of employment with defendant and therefore is not entitled to enforce the written agreement. If the plaintiff was guilty of any material breach of his employment contract, he may not enforce its provisions against the defendant. Compare Capitol Bakers v. Leahy, 20 Del.Ch. 407, 178 A. 648.

■ Defendant says that the only reason he terminated his employment with plaintiff was because plaintiff failed to pay him certain money to which he was entitled. It should be noted that the written agreement containing the covenant which plaintiff seeks to enforce also provides that "the rate of compensation shall be as agreed upon between the parties." The compensation arrangement between the parties was entirely oral. Its terms are discussed later herein.

Defendant first alleges that plaintiff breached his contract by withholding excessive sums for social security payments from defendant's compensation. For the calendar year 1957, the plaintiff admittedly withheld from defendant's pay for social security payments $6.56 more than he should. However, he included this sum later as part of the money withheld and paid for defendant's federal income tax. It was included in the sum shown on the W-2 form. For the calendar year 1958 the plaintiff withheld $27.44 more than was required for social security payments. He once again included it in the defendant's federal withholding tax and showed it on the W-2 form.

Defendant says he told plaintiff he was withholding too much for social security but that plaintiff persisted in his error. I do not believe plaintiff was guilty of anything more than innocent error arising from lack of competence in this field. I can find no intent to deprive defendant of these relatively small sums. Of course the money should have been paid to defendant but I cannot and do not believe the treatment thereof was considered by defendant as a breach of their oral compensation arrangement. Nor was it such in fact.

■ Defendant claims that plaintiff failed to pay him the agreed compensation. Under their oral arrangement defendant was to receive one-third of all cash commissions brought in by him. He was also to receive certain "bonus" money consisting of the following:

1. Fifty per cent of the second split commission in any one month and 60% of any additional splits in the same month.

2. An additional 10% of commissions in the event more than $2,000 per month was brought in by his division.

Defendant claims a breach of the compensation arrangement because he was given only $33\frac{1}{3}\%$ rather than 50% of the fee obtained from a second split placement made in the same month. Under their oral compensation arrangement defendant was to receive 50% of a second split obtained in any one month. The dispute arose because, while the second split placement was also made in July 1958, it was not billed until August. Incidentally, it was billed by defendant not plaintiff. Plaintiff claims that the billing date controls while defendant contends that the placement date controls. The testimony on this point is conflicting. Regardless of which date is the most logical one to control, any agreement between the parties must prevail.

According to defendant's own testimony he did not give notice of an intention to leave until January 15, 1959. This was about five months after the issue over this dispute had been resolved in practice in favor of the billing date. Thus, the parties reached a practical accord as to this aspect of their compensation agreements and the defendant cannot now rely upon that dispute to establish a breach of contract by the plaintiff.

Defendant's final contention is that plaintiff broke the contract by failing to pay to defendant a 10% bonus on the commissions earned by him in November of 1958. This claim is based upon the theory that a term of the contract was that plaintiff was to pay to defendant a bonus of 10% of all commissions earned by defendant in any month that defendant brought in placement fees exceeding $2,000. It is agreed that in November of 1958, defendant brought in over $2,000 in placement fees. However, plaintiff contends that since splits on which bonuses had already been paid were necessary to make up the $2,000, the 10% commission was not due, i.e. that the 10% commission was due only if placement fees resulting from non-splits exceeded $2,000.

In view of defendant's admission and the lack of evidence to the contrary, I must assume that November of 1958 is the first month

in which this situation arose. Since defendant gave notice of termination shortly thereafter, it is impossible to construe a "practical accord" on this issue. It is my belief that the parties at no time agreed as to whether placement fees from splits were to be included in determining the applicability of the 10% bonus provision. Since an agreement was never reached between the parties to cover this particular situation, defendant cannot prevail upon his contention that plaintiff broke the agreement by failing to accept defendant's construction of plaintiff's bonus plan.

It must be noted, however, that the failure of the parties to agree as to this particular aspect of the compensation plan does not negate the covenant not to compete which was contained in the written agreement. I say this because the compensation aspects of the agreement were only to be those which should "be agreed upon between the parties." Defendant does not contend that the written agreement is, in and of itself, a legal nullity.

I therefore conclude that plaintiff is not precluded from enforcing the covenant against accepting employment with a competitor because of any breach of the compensation agreement.

An injunction will issue restraining defendant from working for the defendant Casey until February 12, 1960.

Defendant has counterclaimed for money due him. Plaintiff argues that defendant is not entitled to any money because he took records and information when he left. He relies upon paragraph 6 of the written agreement which provides in pertinent part that if an employee takes records, etc., he forfeits all claims to any compensation whether accrued or not. The short answer is that plaintiff failed completely to prove that defendant took any records or made any list of job applicants for the purpose of taking it with him. Consequently the provision of paragraph 6 is inapplicable. Plaintiff's memorandum does not suggest any other ground as the basis for a general denial of compensation to defendant.

I now deal with specific items in dispute. Defendant claims certain sums based upon his contentions with respect to plaintiff's alleged breaches of contract. Since I have resolved these "bonus" items

against defendant on the breach of a contract issue, it follows that he cannot recover these items in his counterclaim.

Defendant says he should have received the commission on the placement of one Walker as a plant manager. This placement was credited by plaintiff to the administrative division rather than to the technical division of which defendant was in charge. The facts show that the placement made in the Walker case was made by defendant. However, the undisputed evidence was that the classification of the placement (i.e., whether technical or administrative) depended upon the type of work done by the person placed. Obviously, such an arrangement invites problems where, as here, the man's duties are both administrative and technical.

The testimony was that the plaintiff made the determination as to which placement desk was to get "credit." Ordinarily the court would give great weight to that determination. Here, however, the determination was made under strained conditions and after plaintiff was aware that defendant was leaving. Considering this circumstance and in the light of the other evidence as to past similar determinations, I conclude that plaintiff's decision was arbitrary and contrary to his compensation arrangement with defendant.

It follows that defendant is entitled to recover his portion of the Walker placement commission.

The defendant also seeks to recover the regular one-third commission on payments received from placements made by defendant before he terminated his employment. The plaintiff contends that the defendant is not entitled to any such compensation because he took books and records. I have, of course, decided that defendant did not take any records and so defendant is entitled to payment.

I next consider whether defendant is entitled to the regular 33⅓% commission or only to one-sixth of the commission received on each placement made by him before he terminated his employment. Plaintiffs' contention that defendant is entitled to only one-sixth is based on paragraph 3 of the written agreement which provides that "If terminated after one year from the date hereof, employee shall receive one-half of any commissions earned by him after they shall

have been collected by Snelling." Defendant contends that plaintiff paid other employees their full commissions when they terminated their employment. This plaintiff admitted. However, plaintiff denied that defendant was entitled to this because of the fact that he took records and went with a competitor. He also said that this arrangement was not a matter of agreement but was a voluntary act on his part.

Since the written agreement covered this situation the defendant has a heavy burden to show that its terms were subsequently altered by the later oral agreement. I have come to the conclusion that defendant failed to prove an agreement between plaintiff and defendant on this point. I say this principally because I believe that the matter was not handled as one of contract but one of "grace" on the part of plaintiff. Thus, I need not consider the effect of defendant's going with a competitor.

I therefore conclude that as to any commission collected on placements made by defendant before he terminated his employment, the plaintiff must pay him the one-sixth provided by the written contract rather than the one-third claimed.

The parties are in dispute as to whether the Beverly placement is subject to the termination-commission arrangement. It appears that while Beverly was referred by defendant, the contract of employment was not consummated until after defendant left the employ of plaintiff. The wording of paragraph 3 of the agreement states that an employee terminating his agreement shall receive one-sixth of any commission earned by him. Consequently the problem is to determine whether or not the Beverly commission was earned by defendant.

I think the evidence shows that insofar as the relation of the employment office was concerned the placement was complete before defendant terminated his services. Under these circumstances I think defendant earned the Beverly commission before he left. Consequently, he is entitled to one-sixth thereof.

There seems to be a slight difference of opinion between plaintiff and defendant with respect to the amount owed for the month of Jan-

uary 1959. It is not clear from the memoranda submitted as to the basis upon which the court should decide this issue. Consequently, unless defendant desires to present his contention on this point orally to the court, the item will be disallowed.

I believe my rulings herein will permit the parties to determine the commission to which defendant is entitled for subsequent months. After the amount is ascertained the Court will enter a money judgment therefor.

The plaintiff will of course also be required to account to defendant for the monies due him on the basis of fees hereafter received on placements made by defendant before he terminated his employment.

The plaintiff also seeks an injunction against the defendant Casey as well as punitive damages.

 Casey, through its attorney, was put on notice before hiring defendant that plaintiff had a contract with defendant containing the covenant here enforced. Consequently it should also be restrained from employing Gill for the same period. However, I do not deem it appropriate to assess punitive damages because there is some basis for believing that Casey's actions were based in part on an omission not personal to Casey.

Present order on notice.