JONES TRUCK LINES, INC.,
Plaintiff-Appellee,

v.

RYDER TRUCK LINES, INC., and
American Casualty Company,
Defendants-Appellants.

No. 74–1443.

United States Court of Appeals,
Sixth Circuit.

Dec. 13, 1974.

Albert T. McRae, Nelson, Norvell, Wilson, McRae, Ivy & Sevier, Memphis, Tenn., for defendants-appellants.

Thomas R. Prewitt, Memphis, Tenn., for plaintiff-appellee.

Before WEICK, CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is from the judgment of the district court in a declaratory judgment action, declaring and adjudging an indemnification provision in a one-way motor carrier lease agreement void and unenforceable as against public policy and in violation of Interstate Commerce Commission Regulations.

The operative facts are substantially undisputed. Jones, a motor vehicle common carrier, accepted in Kansas City, Missouri, certain goods for transportation from that point to West Monroe, Louisiana. Jones had not been authorized by the I.C.C. to operate in the State of Louisiana and it was therefore necessary for it to make arrangements with some other carrier having a Louisiana authorization to complete the transportation of the goods from Memphis, Tennessee, to the destination point in Louisiana. The goods were transported by Jones in a truck which it had leased from the owner, one Orin Taylor, to Memphis, Tennessee. On this portion of the trip Taylor was also the driver of the vehicle. At Memphis, a proper inspection of the vehicle was made to comply with I.C.C. regulations.[1] The shipment was then

---

1. We find Jones' contention that I.C.C. Regulations were not complied with in the inspec- tion of the equipment at Memphis to be without merit.

transferred under a lease agreement between Jones and Ryder for completion of the trip to Louisiana. This lease, dated February 20, 1973, provided for the leasing of the equipment from Jones Truck Lines, Inc., as lessor, to Ryder Truck Lines, Inc., as lessee. It further provided for the transportation of the goods by use of the leased equipment from Memphis to the destination point.

The lease was actually signed by Taylor, at Memphis on behalf of the lessor Jones, acting as its agent. Since the lease contemplated that Taylor was to continue to operate the vehicle, he became Ryder's agent while driving it to complete the journey. He received the freight bills specifying the route he was to take to West Monroe and indicating that Ryder was the proper party to be contacted in case of an emergency. He actually took a route, however, contrary to that specified in the freight bill, a fact of no significance here.[2] In the course of the trip, he was involved in an accident from which litigation ensued in the Louisiana state courts. After the accident, Ryder acknowledged its responsibility to third parties for the acts of Taylor as its agent, although it did not concede liability. Subsequently, Jones instituted the present action to have the indemnification provision of the one-way lease agreement declared void and unenforceable. The provisions of the Jones-Ryder lease pertinent in this case are as follows:

It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and the Interstate Commerce Commission. It is agreed that Lessor will carry acceptable Public Liability and Property Damage insurance. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses

sustained by Lessee resulting from the use of the aforesaid equipment.

. . . . .

. . . Lessor indemnifies Lessee against any loss resulting from the injury or death of . . . drivers.

. . . . .

. The Lessor shall save the Lessee harmless from any loss, damage or happening giving rise to claims on the part of the shippers . . ..

It is Jones' contention that the indemnification provision in the lease is in conflict with Title 49, C.F.R. § 1057.4(a) which provides:

§ 1057.4 Augmenting equipment.

Other than equipment exchanged between motor common carriers in interchange service as defined in § 1057.5, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:

(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:

. . . . .

(4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, except: [exceptions not relevant to this case].

The argument is that these regulations established a public policy obligating Ryder as the lessee of the equipment to assume "complete" responsibility for Taylor's operation of the leased vehicle in Louisiana, whereas the indemnification provision of the lease would exempt Ryder from such responsibility and place the ultimate loss on Jones.

This argument, however, flies in the face of the express terms of the indemnification agreement which provides that

2. We treat the departure of the driver from the specified route as of no significance on the present appeal as it is neither argued before us by the parties nor discussed by the district court in its opinion.

the equipment under the lease "is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public . . .." This provision is in conformity with the requirement of the regulation that a lease of equipment "shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the Lessee for the duration of said contract, lease, or other arrangement . . .."

The authorities are in accord that an indemnification agreement in a one-way lease providing for the complete assumption of responsibility for the operation of the equipment by the lessee for the duration of the term of the lease is not violative of Title 49, C.F.R. § 1057.4(a). Thus the Fifth Circuit in Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F.2d 710 (5th Cir. 1972), held that the regulation was not violated by an indemnification clause requiring a lessor in a one-way lease agreement to reimburse the lessee for all losses arising out of the operation of the lease. In support of this view the court pointed out that such an indemnification provision under which the parties freely contract as to which of them would ultimately be responsible for any damages caused to a third party is not materially different from a contract of liability insurance covering a loss caused by the fault or negligence of the insured party. Similarly, the Fourth Circuit in Carolina Freight Carriers Corp. v. Pitt County Transportation Co., 492 F.2d 243 (4th Cir. 1974), petition for certiorari filed 43 U.S.L.W. 3067 (August 13, 1974) (No. 73–1750), in upholding an indemnification provision comparable to the one now under consideration, observed that there was nothing in the lease agreement purporting to relieve the lessee from its responsibility to third parties for damages arising from the operation of the leased equipment. On the contrary, as in the present case, the agreement expressly provided that the lessee accepted full responsibility. The Fourth Circuit in its opinion further observed that a voluntary distribution of the ultimate costs among various parties does not in any way circumvent or contravene the assumption by one of the parties of full responsibility to the public for any injury that might be inflicted.

The ruling of the Seventh Circuit in Alford v. Major, 470 F.2d 132 (7th Cir. 1972), that the indemnification agreement considered in that case contravened the I.C.C. regulation is not in conflict with the rulings of the Fourth and Fifth Circuits. This is true for the obvious reason that in Alford v. Major, *supra,* the indemnification agreement itself permitted the lessor to retain full control over the truck and driver during the full term of the lease in direct violation of the applicable I.C.C. regulation which specifically requires that the *exclusive* control of the equipment shall be vested in the lessee for the duration of the lease.

That the lessor in the present case agreed to reimburse the lessee for any losses in no way impairs the public's right of recourse against Ryder for damages caused by its operation of the truck in Louisiana. On the contrary, the indemnification agreement would appear to have the effect of strengthening the possibility of recovery by a third party in that it would provide another source or "pocket" from which a recovery could be obtained. The argument that the indemnification provision would have the effect of making Ryder less careful in its operation of the vehicle in that it would enable Ryder to transfer its losses to Jones is unconvincing. The uncertainties and inconveniences attendant upon enforcement of such an indemnification provision are alone sufficient to motivate the indemnitee to pursue a course of caution and prudence in its operations. Another factor which would normally cause a carrier to avoid accidents or injuries to third persons would be its desire to establish a name for conducting a safe operation to protect itself against a reputation for carelessness or indifference to the rights of others.

We are not persuaded by Jones' alternative argument, not resolved by the district court, that the contract of indemnity before us cannot be construed to relieve Ryder from the consequences of its own acts of negligence. On this issue, it appears to be conceded that Tennessee law controls since the lease agreement was executed and the equipment was transferred to the lessee in that state. In its most recent pronouncement on the subject, the Supreme Court of Tennessee has stated that there is no rule of public policy prohibiting the indemnitee from contracting for indemnification on account of its own acts of negligence but that a contract will not be so construed unless it was clearly intended to have that effect. Kellogg v. Sanitors, Inc., 496 S.W.2d 472 (Sup.Ct. of Tenn.1973). The court quoted with approval the following statement of the rule from 41 Am.Jur.2d Indemnity, Sec. 13:

A contract of indemnity purporting or claimed to relieve one from the consequences of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, *or unless no other meaning can be ascribed to it.* Mere general, broad, and seemingly all inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence. (emphasis supplied by Tennessee court) 496 S.W.2d at 474.

Applying this rule in the present case, we think it is clear from the indemnity contract that the parties intended that Ryder (indemnitee) should be reimbursed for all losses which it sustained resulting from its use of the equipment and while under its exclusive dominion and control. In unequivocal terms the contract provides that the equipment shall be in the "exclusive possession, control and use" of the lessee and that the lessee assumes full responsibility in respect to the equipment "to the public." The lessor, on the other hand, agrees to carry acceptable Liability and Property Damage insurance and "to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment." Clearly this language is susceptible of no meaning other than that the lessor was to indemnify the lessee for all losses sustained by it and resulting from its operation and use of the equipment, whether caused by the lessee's own acts of negligence or otherwise.

The judgment of the district court is therefore reversed and the action is remanded to that court for entry of a declaratory judgment consistent with this opinion.