**RANGER NATIONWIDE, INC., Plaintiff,**

v.

**NATIONAL INDEMNITY COMPANY and Jackson Freight Lines, Defendants and Third Party Plaintiffs,**

v.

**AMERICAN CASUALTY COMPANY, and Allianz Underwriters Insurance Company, Third Party Defendants.**

Civ. A. No. 86–79–JLL.

United States District Court,
D. Delaware.

March 26, 1987.

B. Wilson Redfearn and Nancy E. Chrissinger of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for plaintiff, and third party defendant, American Cas. Co.

Richard P.S. Hannum of Prickett, Jones, Elliott, Kristol and Schnee, Wilmington, Del., for defendants and third party plaintiffs.

Howard M. Berg and Paul Cottrell of Berg, Bifferato, Tighe & Cottrell, P.A., Wilmington, Del., for third party defendant Allianz Underwriters, Inc.

LATCHUM, Senior District Judge.

## I. INTRODUCTION

This action arises out of an automobile accident involving a tractor trailer owned by defendant and third party plaintiff Jackson Freight Lines ("Jackson") and leased to plaintiff Ranger Nationwide, Inc. ("Ranger").[1] (Docket Item ["D.I."] 33 at ¶ 8.) Ranger settled some of the potential claims arising out of the accident and filed this action seeking indemnification from Jackson, and a declaration that an insurance policy issued to Jackson by National Indemnity Company ("National") provides the primary coverage for any liability arising out of the accident. (D.I. 1.) Jackson and National filed an answer denying liability to Ranger and advancing a counterclaim against Ranger seeking a declaration that Ranger bears the sole responsibility for the accident (D.I. 9), and a third party complaint against American Casualty Company ("American Casualty") and Allianz Underwriters Insurance Company ("Allianz"), re-

---

1. Ranger Nationwide, Inc., is the corporate successor of Ranger Division of Ryder/Pacific Intermountain Express Company. (D.I. 33 at ¶ 1.) During the time frame relevant to this action, Ranger often used its previous corporate name, Ryder Truck Lines, in its business dealings. (D.I. 37 at 2.) In fact, the lease agreement in question refers to Ranger by this name. (D.I. 33 at Exhibit D.)

questing indemnification from American Casualty and Allianz of any amounts owed to Ranger as a result of the accident. (*See* D.I. 20.) After some initial discovery all of the parties moved for summary judgment. (D.I. 34; 35; 38.)

## II. BACKGROUND

The parties have stipulated to the relevant facts. (D.I. 33.) On October 27, 1983, Ranger, an authorized interstate carrier under the authority of the Interstate Commerce Commission ("ICC"), leased a tractor trailer from Jackson for the purpose of transporting goods from Virginia to New Hampshire. (*Id.* at ¶¶ 5–8.) The lease agreement ("the Lease") provided that Edward Peak ("Peak") would drive the tractor trailer. (*See id.* at Ex. D.)

The operation of the tractor trailer was pursuant to Ranger's ICC permit MC # 156490 (*id.*), and the Lease was thus subject to ICC regulations. *See* 49 C.F.R. 1057.11 (1987). The Lease complied with the applicable regulations by specifying that Ranger would maintain exclusive control over the tractor trailer and "assume full responsibility in respect to the equipment to the public, the shippers, and all regulatory bodies having jurisdiction." (D.I. 33 at Ex. D.) Ranger also agreed to maintain insurance coverage sufficient to fulfill this obligation. (*Id.*) Ranger decided to maintain self-insurance for any liability amount up to $500,000, as permitted by ICC regulations. Ranger also maintained an excess liability policy with Allianz covering liability above $500,000 but less than $10,000,000 (*id.* at Ex. B), and a public liability surety bond with American Casualty in the amount of $1,000,000. (*Id.* at Ex. A.)

The Lease contained an indemnification provision whereby Jackson agreed to indemnify Ranger for "any and all losses sustained by lessee [Ranger] resulting from the use of the aforesaid equipment." (*Id.* at Ex. D.) Jackson also agreed to maintain adequate insurance for this purpose. (*Id.*) Jackson attempted to obtain such insurance from National in the amount of $500,000. (*Id.* at Ex. C.)

On October 28, 1983, while operating the leased tractor trailer, Peak collided with a passenger car traveling north on Interstate 95, in the State of Delaware. (D.I. 33 at ¶ 8.) Palmer Swaine, an occupant of the passenger car, died as a result of the injuries he sustained in the accident. (*Id.* at ¶ 9.) Harold Flood, Elizabeth Flood, Nathan Howell, and Ruth Howell all sustained serious injuries as a result of the accident. (*Id.*)

Ranger settled the claims arising out of Palmer Swaine's death for $226,208.32. (*Id.* at Ex. E.) Ranger and Jackson jointly settled the claims of Harold and Elizabeth Flood for $20,000. (D.I. 33 at ¶ 11.) Nathan and Ruth Howell's claims are currently being litigated in the New Castle County Superior Court. (*Id.* at ¶ 12.) Ranger and Jackson are joint defendants in that suit.

## III. ANALYSIS

The issues presently before the Court have arisen as cross motions for summary judgment. In order for a court to grant a motion for summary judgment, the moving party must convince the court that no genuine issue of material fact exists with regard to the motion, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1986). A court deciding a motion for summary judgment must view the facts, and all inferences therefrom, in the light most favorable to the non-moving party. *Adickes v. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). It is with this standard in mind that the Court must consider the parties' motions.

Ranger seeks summary judgment against Jackson and National based on Jackson's agreement to indemnify Ranger for any losses Ranger incurred as a result of the accident. (D.I. 1; 34.) Ranger also seeks a declaration that the insurance policy issued to Jackson by National provides the primary coverage for the accident and operates to Ranger's benefit insofar as Ranger has settled the majority of claims arising out of the accident. (D.I. 1; 34.)

Jackson and National deny any liability to Ranger and request that the Court grant

summary judgment in their favor, dismiss Ranger's complaint, and declare Ranger liable for all losses resulting from the accident. (D.I. 9; 35.) Jackson and National also seek summary judgment on their third party claims against American Casualty and Allianz for indemnification of any amounts they owe to Ranger. (D.I. 20; 35.)

American Casualty and Allianz deny any liability for the accident and request summary judgment and the dismissal of Jackson's and National's third party complaint against them. (D.I. 27; 30; 34; 38.)

The Court is thus faced with a motion from each party in this case. Each motion is met by a cross motion. The Court will discuss each motion and its cross motion together since they are actually opposite sides of the same legal issue.

### A. *Ranger v. Jackson*

Ranger contends that Jackson is liable for any losses Ranger incurred as a result of the accident pursuant to the indemnification provision of the Lease. (D.I. 37 at 6–10.) Jackson argues that the indemnification provision is invalid and that the applicable ICC regulations make Ranger solely responsible for the accident. (D.I. 36 at 8–10.) For the reasons stated below, this Court agrees with Ranger and will thus grant Ranger's motion for summary judgment as to its claim against Jackson, and correspondingly deny Jackson's motion for summary judgment as to its claim against Ranger.

At the time of the accident, Peak was operating the tractor trailer pursuant to Ranger's ICC permit. (D.I. 33 at ¶ 8.) As an ICC authorized carrier, Ranger must adhere to various regulations when leasing a tractor trailer. *See* 49 C.F.R. §§ 1057.1–1057.42 (1987). All leases between an ICC authorized lessee and a non-registered lessor, involving interstate commerce, must be in writing and contain certain mandatory provisions. 49 C.F.R. §§ 1057.11–1057.12. Most importantly for our purposes, the lease agreement must provide that the regulated lessee will "assume complete responsibility for the operation of the equip-

ment for the duration of the lease." 49 C.F.R. § 1057.12(a). The Lease complied with this provision by providing that "the lessee assumes full responsibility with respect to the equipment it is operating to the public, the shippers, and all regulatory bodies having jurisdiction...." (D.I. 33 at Ex. D.)

As Jackson points out, the above regulations make Ranger the statutory employer of Peak, and as such, responsible to the public for his negligence. *Simons v. King*, 478 F.2d 857, 867 (6th Cir.1973); *Cosmopolitan Mut. Ins. Co. v. White*, 336 F.Supp. 92, 101 (D.Del.1972). Ranger does not dispute this. Ranger admits that it bears the primary obligation to the public for Peak's actions. (D.I. 1 at ¶ 16.) However, that obligation having been fulfilled, Ranger contends that Jackson is contractually liable to it under the indemnification agreement for all expenses Ranger incurs as a result of the accident. (D.I. 1 at ¶ ¶ 28–31.) Jackson acknowledges the existence of the indemnification provision but insists that the provision is invalid since it violates the ICC regulations which require Ranger to assume full responsibility for the leased vehicle. (D.I. 43 at 6–11.) The Court disagrees.

■ The primary purpose of the ICC regulations quoted above is the fixing of financial responsibility for damages to shippers and *members of the public*. *Trans-American Freight v. Brada Miller*, 423 U.S. 28, 37, 96 S.Ct. 229, 233, 46 L.Ed.2d 169 (1975). Ranger has fulfilled this obligation to the public by settling the Swaine claims, jointly settling the Flood claims with Jackson, and defending the Howell claims with Jackson. (D.I. 33 at ¶¶ 9–11.) This obligation to the public having been fulfilled, the regulations do not prevent the parties from apportioning the ultimate responsibility for the accident amongst themselves by use of an indemnification contract. *Brada Miller*, 423 U.S. at 39, 96 S.Ct. at 234.

In *Brada Miller*, the Supreme Court held that an indemnification provision in a lease agreement does not violate the ICC requirements that the lessee assume full re-

sponsibility for the leased equipment. *Id.* at 38, 96 S.Ct. at 234. The Court held that the indemnification agreement therein "did not affect the basic responsibility of the lessee to the public; it affected only the relationship between the lessee and the lessor." *Id.* at 39, 96 S.Ct. at 234. Similarly, the indemnification clause in the case at bar affects only Ranger's relationship with Jackson, and has no affect on Ranger's obligation to the public under the ICC regulations.

Jackson attempts to distinguish *Brada Miller* on the grounds that the indemnification clause in that case dealt exclusively with losses arising from the lessor's negligence, while the clause herein applies to all losses. (D.I. 43 at 6.) This distinction is without merit. The reasoning employed by the Supreme Court in *Brada Miller* applies equally well to both kinds of indemnification clauses. Whether the lessor agrees to indemnify the lessee for all losses or only losses resulting from the lessor's negligence, the lessee's obligation to the public remains in force. The scope of the indemnification agreement is simply a matter of degree affecting only the relationship between the lessor and lessee.

Moreover, all of the circuit courts to address the issue agree that contracts to indemnify a lessee for all losses do not violate ICC regulations. *Jones Truck Lines, Inc. v. Ryder Truck Lines, Inc.,* 507 F.2d 100, 102 (6th Cir.1974); *Carolina Freight Corp. v. Pitt County Transp. Co.,* 492 F.2d 243, 246 (4th Cir.1974); *Allstate Ins. Co. v. Alterman Transp. Lines, Inc.,* 465 F.2d 710, 713 (5th Cir.1972). Employing the same reasoning as *Brada Miller,* these circuit courts upheld indemnification agreements almost identical to the one herein. Since there are no decisions of the Third Circuit directly on point, the Court will follow these apposite decisions.

Further, Jackson failed to cite even one case in support of its position. The Court's research reveals that this omission was not due to Jackson's inadvertence, but to the fact that no such cases exist. Based on the above, the Court concludes that the indem-

nity provision contained in the Lease does not violate the applicable ICC regulations.

This conclusion is not dispositive of the issue, however. Jackson contends that even if the indemnity provision herein is valid under ICC regulations, the provision is unenforceable under general principles of contract law. (D.I. 36 at 14–16.) Since a decision on these issues requires the Court to consider state contract law, the Court requested that the parties brief the choice of law issue and instruct the Court as to which state's laws apply. The parties agree that Virginia law is controlling on this issue since the Lease was negotiated and entered into in that state. (D.I. 49 at 2–3; 50 at 5–6.) However, the parties were unable to find a single Virginia decision on point. (D.I. 49 at 3; 50 at 5.) Thus the Court must look to other jurisdictions and decide these issues on generally accepted principles of contract law.

Jackson advances three arguments in support of its contention that the indemnification provision is unenforceable under contract law principles. First, Jackson maintains that the language of the provision is ambiguous and does not express an intention by the parties that Ranger be indemnified for losses resulting from its own negligence. The clause would thus be inapplicable in this case since the accident was caused by Peak's negligence, imputed to Ranger as his statutory employer. (D.I. 50 at 6.)

■ Largely for public policy reasons, courts will not construe an indemnification agreement as covering an indemnitee's own negligence unless the parties expressed that intention in "clear and unequivocal terms," *Kellogg v. Sanitors, Inc.,* 496 S.W.2d 472, 474 (Tenn.1973), or used language that is "crystal clear." *Sweetman v. Strescon Indus., Inc.,* 389 A.2d 1319, 1320 (Del.Super.1978). Thus the Court must decide if the language of the indemnification agreement herein clearly expresses the parties' intention that Ranger be indemnified for all losses, including the negligence of Peak, its statutory employee.

The Sixth Circuit confronted this identical question in a case involving Ranger's

corporate predecessor Ryder Truck Lines. *Jones Trucking Lines, Inc. v. Ryder Trucking Lines, Inc.,* 507 F.2d 100 (6th Cir.1974). Construing an indemnification provision virtually identical to the one herein, the Sixth Circuit stated:

> Clearly this language is susceptible of no meaning other than that the lessor was to indemnify the lessee for all losses sustained by it and resulting from its operation and use of the equipment, whether caused by the lessee's own acts of negligence or otherwise.

*Jones Trucking Lines, Inc.,* 507 F.2d at 103.

■ This Court agrees. The standard indemnification provision used by Ranger in *Jones* and the case at bar, states that the lessor will indemnify the lessee for "all losses" resulting from the use of the leased equipment. (D.I. 33 at Ex. D.) The parties chose not to limit that language in any way and the Court refuses to do so now.

Second, Jackson insists that the parties did not intend for the term "losses," as used in the indemnification provision, to encompass all losses sustained by Ranger, but only those losses not covered by Ranger's insurance. (D.I. 36 at 15.) The fallacies of this argument are apparent. As stated above, the clear language of the indemnification provision contractually mandates Jackson, as lessor, to indemnify Ranger for "all losses." The parties did not define this term to mean only losses not covered by Ranger's insurance. More importantly, to do so would have been absurd. Ranger carries insurance with a limit of $10,000,000. (D.I. 33 at Ex. A.) Certainly Ranger would not include an indemnification provision in its leases which would not apply until its liability exceeds $10,000,000 in a single accident. This would make the provision virtually useless. The Court declines to adopt such a tortured reading of the indemnification provision.

■ Third, Jackson maintains that Ranger breached the Lease by failing to maintain adequate insurance, and thus cannot enforce the indemnification provision of the Lease.[2] A party who breaches a contract may not rely on the benefits of that same contract. *Schutzman v. Gill,* 38 Del.Ch. 459, 154 A.2d 226, 230 (1959). Ranger agreed to "maintain insurance coverage for the protection of the public, pursuant to Commission regulations under 49 U.S.C. 10927." (D.I. 33 at Ex. D.) Jackson contends that Ranger breached that provision by carrying only a surety bond with American Casualty, not insurance, and negotiating a $500,000 deductible in its policy with Allianz, thus effectively carrying no insurance coverage for accidents with total damages below $500,000. (D.I. 36 at 15.) The Court disagrees.

Jackson's argument totally ignores the fact that Ranger is self-insured for all losses less than $500,000, and has in fact satisfied its obligation as a self-insurer by settling the majority of claims arising out of the accident. (D.I. 33 at 10–11.) The Lease requires that Ranger maintain insurance for the protection of the public pursuant to the Commissioner's regulations. (*Id.* at Ex. D.) ICC regulations permit an authorized carrier to insure itself, 49 C.F.R. § 1043.5, and Ranger has taken advantage of this opportunity. Thus Ranger has fulfilled its obligation under the Lease by maintaining adequate self-insurance pursuant to the Commissioner's regulations. Jackson's claim that Ranger breached the contract is, therefore, meritless.

■ Based on the above discussion, the Court concludes that the indemnification provision of the Lease is valid and enforceable. In so holding, the Court rejects Jackson's argument that the entire Lease may be unenforceable due to Peak's lack of authority to enter into the Lease on behalf of Jackson. (D.I. 36 at 14, note 5.) Jackson voluntarily entered into a stipulation of facts with Ranger in which the parties

---

**2.** Jackson offers this argument only in the alternative. As will be discussed later, Jackson maintains that Ranger's insurance policy with Allianz and surety bond with American Casualty both provide coverage for the accident. (D.I. 36 at 11–13.) However, if the Court should conclude that neither of these policies apply, Jackson contends that Ranger breached the Lease by failing to maintain adequate insurance. (*Id.* at 15.)

agreed that "[o]n October 27, 1983, within the geographical confines of the State of Virginia, Ranger entered into a Lease Agreement, which was prepared by it, with Jackson for a tractor trailer unit." (D.I. 33 at ¶ 5.) The Court reads this stipulation as an admission by both parties that a valid lease agreement was in fact entered into. Having voluntarily admitted the Lease's validity, Jackson will not now be heard to contest it.

▉ This finding does not end the Court's analysis, however. In a final effort to avoid liability for the accident, Jackson insists that if the Court finds the indemnification provision to be valid and enforceable, and orders Jackson to indemnify Ranger for the losses resulting from Peak's negligence, the Court must then order Ranger, as Peak's statutory employer, to pay that same amount to Jackson under a common law indemnification theory. (D.I. 36 at 17.) Jackson maintains that since its liability for the accident is vicarious, based solely on Peak's negligence imputed to it, Jackson is entitled to indemnification from Peak. And as Peak's statutory employer, Ranger must satisfy Peak's obligation to indemnify Jackson. The Court flatly rejects this argument for two fundamental reasons.

First, Jackson's conclusion is based on a faulty premise. Jackson's liability in this case is not based on an imputed negligence theory. As this opinion has repeatedly emphasized, Jackson's liability to Ranger is purely contractual, based on the indemnification provisions of the Lease, and has nothing to do with Peak. Thus Jackson is not entitled to indemnification from Peak or Ranger as Peak's statutory employer.

Second, acceptance of Jackson's argument would result in a circle of liability involving Jackson and Ranger, with no final result possible. Jackson urges the Court to find Ranger liable to it under a common law indemnification theory. However, as this Court has held, Jackson is contractually liable to Ranger for all losses Ranger incurs as a result of the accident. Thus, if the Court accepted Jackson's argument, the following situation would result:

Jackson would have to indemnify Ranger, under the indemnification provisions of the Lease, for all monies Ranger paid to the victims as a result of the accident; Ranger would then have to return the money to Jackson under the common law indemnification theory advanced by Jackson; since this would result in a loss to Ranger as a result of the accident, Jackson would once again have to indemnify Ranger under the Lease; Ranger would then be liable to Jackson once again under a common law theory of indemnification, and this would continue *ad infinitum.*

In sum, the indemnity provision of the Lease is valid and enforceable and Jackson must indemnify Ranger in accordance with that provision. Ranger is not liable to Jackson under a common law theory of indemnification. Consequently, the Court will grant Ranger's motion for summary judgment against Jackson, and deny Jackson's cross motion for summary judgment against Ranger.

### B. *Ranger v. National*

In Count One of its complaint, Ranger contends that the coverage National provides to Jackson is the primary coverage for the accident, operating to Ranger's benefit for any amounts Ranger has paid as a result of the accident. (D.I. 42 at 3.) In response, National contends that the Trucker's Endorsement provision of its policy excludes any coverage of Ranger or Peak and thus its policy is not primary coverage for the accident. (D.I. 43 at 4–5.) For the reasons stated below, this Court agrees with National and will thus deny Ranger's motion for summary judgment as to Count One of its complaint, grant National's motion, and dismiss Count One.

The National policy contains a provision known as the Truckman's Endorsement which provides as follows:

Except as respects the named insured [Jackson] such insurance as is afforded by this policy shall not apply as respects any vehicle engaged in operating on behalf of any person or organization and over a route such person or organization is authorized to serve by Federal or pub-

lic authority, if such person is subject to the security requirements of any motor carrier law. Any terms or conditions of this policy or printed forms attached thereto at variance with the conditions of this endorsement shall be superseded by the terms of this endorsement.

(D.I. 33 at Ex. C.)

Peak was operating the leased tractor trailer pursuant to Ranger's ICC permits, over a route which Ranger is authorized by the ICC to serve. (D.I. 33 at ¶ 8.) Further, Ranger is subject to the financial responsibility requirements of the Motor Carrier Act of 1980. (*Id.*) Thus, the Truckman's Endorsement is directly applicable to the case at bar.

■ Courts interpreting the Truckman's Endorsement have held that the purpose of that provision is to place the responsibility for an accident on the lessee's [Ranger's] carrier. *Mustang Transp. Co. v. Ryder Truck Lines, Inc.*, 523 F.Supp. 1097, 1105 (W.D.Pa.1981); *Allstate Ins. Co. v. General Fin. and Casualty Co.*, 378 F.Supp. 682, 685 (E.D.Pa.1972). Thus this provision makes Ranger's insurance primary. Since Ranger is self-insured for all losses below $500,000, the primary responsibility for the accident lies with Ranger and Count One of its motion against National must be denied.

In Count Two of its complaint, Ranger contends that National, as Jackson's insurer, is responsible for Jackson's liability under the indemnification provision of the Lease. (D.I. 1 at Count 2.) National admits coverage of Jackson and agrees to assume liability for any amounts Jackson owes Ranger under the indemnification provision. (D.I. 50 at 21.) Despite the fact that all of the parties seem to concur, the Court is unwilling to accept this result in the present posture of this case.

This Court has attempted on numerous occasions, without success, to point out the conflict that exists in this case between Jackson and National. This Court has held that Jackson is liable to Ranger under the indemnity provision of the Lease. National insures Jackson for all losses Jackson becomes legally obliged to pay as a result of an automobile accident. (D.I. 33, Ex. C.) However, the Truckman's Endorsement, which apparently supersedes the terms of the policy, may exclude coverage to Jackson for the accident.

As quoted earlier, the Truckman's Endorsement states that "except as respects the named insured, such insurance ... shall not apply as respects any vehicle engaged in operating on behalf of any person ... over a route such person ... is authorized to serve by federal ... authority." (*Id.*) The key to the conflict issue turns on the interpretation of the phrase, "except as respects the named insured." Counsel for Jackson and National interprets this phrase as meaning that the Truckman's Endorsement excludes coverage except when the named insured incurs liability under the situation described. Thus, even if a vehicle is operated in the manner prohibited by the Truckman's Endorsement, as long as the named insured incurs liability for the accident, coverage is provided. Under this reading, National's policy would cover Jackson for Jackson's liability to Ranger.

This phrase is also subject to a different interpretation, however. The language "except as respects the named insured" could mean that coverage is precluded under the situation described unless the named insured is the "person" on behalf of whom the vehicle is being operated. If this interpretation is correct, the policy would not appear to cover Jackson in the situation herein since the vehicle was being operated on behalf of Ranger when the accident occurred.

■ The Court does not express any opinion as to which of these interpretations is correct. However, it is clear that the fact that the second interpretation is plausible gives rise to a conflict of interests in this case. If there is an argument available to National for denying coverage to Jackson, National should have a fair opportunity to advance that argument. It is denied that opportunity as long as it joins its interest in this litigation with Jackson and is represented by the same attorney as Jackson.

Thus this Court will decline to decide this issue at the present time. Because of the conflict of interests which appears to exist, the Court will require National or Jackson to obtain separate counsel, at which time Ranger, National, and Jackson can independently brief the issue of National's liability to Ranger and/or Jackson as a result of Jackson's obligation under the contractual indemnification provision entered into between Ranger and Jackson.

### C. *Jackson and National v. Allianz and American Casualty*

█ Jackson and National have moved for summary judgment on their third party complaint against Allianz and American Casualty. (D.I. 20; 35.) Allianz and American Casualty deny any responsibility to Jackson or National and move for summary judgment and the dismissal of Jackson's and National's third party complaint. (D.I. 27; 30; 34; 38.) For the reasons stated below, the Court will deny Jackson's and National's motion for summary judgment, grant Allianz and American Casualty's motion, and dismiss Jackson's and National's third party complaint.

Jackson and National contend that the excess insurance policy issued to Ranger by Allianz and the surety bond issued to Ranger by American Casualty provide primary coverage for any losses resulting from the accident. (D.I. 43 at 12–15.) Both Allianz and American Casualty deny primary coverage. (D.I. 37 at 11–12; 39 at 6–7.)

Allianz maintains that its policy issued to Ranger contains a self-insured deductible of $500,000 and it thus bears no responsibility for the accident until the total losses resulting from the accident exceed $500,-000. (D.I. 39 at 6–7.) The Court agrees. The Allianz policy clearly states that Allianz' liability "shall be only for the ultimate net loss in excess of the insured's retained limit." (D.I. 33 at Ex. B, p. 1.) The retained limit on the policy is $500,000. (*Id.* at Ex. B, cover page.) Thus Allianz

bears no responsibility for the accident until the total losses exceed $500,000.

To date, the total losses resulting from the accident amount to $246,208.32. (D.I. 33 at ¶¶ 10–11; Ex. E.) However, the Howell claims are currently being litigated in the New Castle County Superior Court. (D.I. 33 at ¶ 12.) If the Howells receive in excess of $253,791.68 for their claims, the total losses for the accident would exceed $500,000. Allianz' policy would then apply and provide primary coverage for all amounts in excess of $500,000.

American Casualty also contends that it is not presently responsible for any losses resulting from the accident. (D.I. 37 at 11–12.) American Casualty maintains that as a surety, it is not liable for any losses until Ranger defaults on its obligations. Since Ranger has satisfied all of its obligations to the public, American Casualty insists it presently bears no liability for the accident. The Court agrees that American Casualty, as a surety, can have no liability for obligations its principal has fulfilled. 72 C.J.S. *Principal and Surety* § 2 (1987). However, the fact that the Howell claims have yet to be resolved leaves open the possibility that American Casualty may become liable for future obligations that Ranger fails to fulfill.

Thus the Court finds that Allianz and American Casualty may, in the future, be liable for a portion of the losses resulting from the accident. However, this finding does little to support Jackson's and National's motion for summary judgment. In order for Jackson's and National's motion to succeed, they must demonstrate not only that Allianz and American Casualty may incur some liability as a result of the accident, but also that such liability would accrue to Jackson's and National's benefit. This they have not done.

Jackson and National assert a claim for indemnification in their third party complaint against Allianz and American Casualty. (D.I. 20 at ¶ 10.) However, Jackson and National fail to advance even one argument in their briefs to support this claim.[3]

---

**3.** It should be noted that Ranger also asserts a claim for indemnification against National without ever espousing a theory under which such a right could be found. (D.I. 1 at Count 1; 37;

(D.I. 36; 43; 50.) Jackson and National seem content to rely on their naked claim for indemnification in the hope that the Court would find some theory upon which to base an indemnification right. The Court refuses to play the role of an advocate and argue Jackson's and National's case for them. In the absence of any guidance from the parties as to why they are entitled to indemnification, the Court refuses to grant them such a right. The Court will thus deny Jackson's and National's motion for summary judgment, grant Allianz' and American Casualty's motion, and dismiss Jackson's and National's third party complaint.

## IV. CONCLUSION

For the reasons stated above, the Court will take the following actions: (1) grant Ranger's motion for summary judgment against Jackson as to Count Three of Ranger's complaint; (2) deny Jackson's cross motion for summary judgment against Ranger requesting the dismissal of Count Three of Ranger's complaint; (3) deny Ranger's motion for summary judgment against National as to Count One of its complaint; (4) grant National's cross motion for summary judgment against Ranger, requesting the dismissal of Count One of Ranger's complaint; (5) deny Jackson's and National's motion for summary judgment against Allianz and American Casualty as to Jackson's and National's third party complaint; (6) grant Allianz' and American Casualty's cross motion for summary judgment against Jackson and National requesting the dismissal of Jackson's and National's third party complaint; (7) decline to decide Ranger's motion for summary judgment against National as to Count Two of Ranger's complaint, and National's cross motion for summary judgment requesting the dismissal of Count Two of Ranger's complaint.

42; 47; 49.) However, due to the Court's decision in part III–B of this opinion, that National bears no direct liability for the accident, it was

An order will be issued in accordance with this Memorandum Opinion.

unnecessary to consider Ranger's claim for indemnification.